# United States Court of Appeals

*for the*

# First Circuit

Case No. 25-1360

EDERVALDO RODRIGUES DA SILVA,

*Petitioner-Appellee,*

v.

JESSICA SILVEIRA DA SILVA,

*Respondent-Appellant,*

GILBERTO LUCAS,

*Respondent.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, BOSTON, IN CASE NO. 1:24-cv-11280-ADB

## PUBLIC BRIEF FOR RESPONDENT-APPELLANT

BETH I.Z. BOLAND
LEA GULOTTA JAMES
AMANI KMEID
RUBEN J. RODRIGUES
FOLEY & LARDNER LLP
*Counsel for Respondent-Appellant*
111 Huntington Ave, Suite 2500
Boston, Massachusetts 02199
(617) 342-4000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF THE CASE .............................................................3

SUMMARY OF THE ARGUMENT ........................................................7

LEGAL STANDARDS ...................................................................12

    I.      Law of the Well-Settled Defense ........................................12

    II.     Standard of Appellate Review............................................14

ARGUMENT ...........................................................................15

    I.      The District Court Properly Found that the Well-Settled
          Defense Was Available ...................................................15

    II.     The District Court Legally Erred by Comparing the Child's
          Family and Community Ties in the United States to Those
          that Might Exist in Brazil .................................................16

    III.    The Ultimate Conclusion that the Child Is Not Well-Settled
          Was Erroneous, Both Due to Errors in Factual Findings, and
          Errors Weighing the Evidence .........................................20

          A.     The Child is Old Enough to Form Meaningful
                 Attachments to His Home in the United States ......................23

          B.     The Child Has Lived in a Stable Environment for Over
                 Two Years ..............................................................24

          C.     The Child Has Consistently Attended School, and Has
                 Improved Academically While in the United States ...............26

          D.     The Child Has Friends and Relatives in Massachusetts
                 with Whom He Has Strong Relationships .............................31

          E.     The Child Participates in Community and
                 Extracurricular Activities ............................................37

F.     Appellant is Financially Stable ..................................................39

CONCLUSION ........................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aguirre v. Villatoro*,
    Civ. Ac. No. 1:23-cv-302, 2024 WL 5191968
    (E.D. Va. Dec. 20, 2024) .................................................................. 17, 24, 32

*Alcala v. Hernandez*,
    826 F.3d 161 (4th Cir. 2016) .............................................................. *passim*

*Anderson v. Acree*,
    250 F. Supp. 2d 876 (S.D. Ohio 2002) ................................................... 33, 35

*Castellanos Monzón v. De La Roca*,
    Civ. Ac. No. 16-0058, 2016 WL 1337261 (D.N.J. Apr. 5, 2016) ................23

*da Costa v. de Lima*,
    No. 22-CV-10543-ADB, 2023 WL 4049378 (D. Mass. June 6,
    2023) (Burroughs, J.), *aff'd*, 94 F.4th 174 (1st Cir. 2024) ................... *passim*

*da Silva v. de Aredes*,
    953 F.3d 67 (1st Cir. 2020)............................................................ 14, 17, 20

*Darin v. Olivero-Huffman*,
    746 F.3d 1 (1st Cir. 2014)..............................................................................16

*Diaz Arboleda v. Arenas*,
    311 F. Supp. 2d 336 (E.D.N.Y. 2004) ........................................................36

*Edoho v. Edoho*,
    No. H-10-1881, 2010 WL 3257480 (S.D. Tex. Aug. 17, 2010) ..................23

*Garza-Castillo v. Guajardo-Ochoa*,
    No. 2:10-CV-00359-LDG, 2012 WL 523696
    (D. Nev. Feb. 15, 2012) ..............................................................................23

*Gwiazdowski v. Gwiazdowska*,
    No. 14-cv-1482 (FB)(RER), 2015 WL 1514436
    (E.D.N.Y. Apr. 3, 2015) .............................................................................24

*In re B. Del C.S.B.*,
    559 F.3d 999 (9th Cir. 2009) ......................................................................24

*In re D.T.J.*,
     956 F. Supp. 2d 523 (S.D.N.Y. 2013) ................................................ 24, 26, 31

*In re Lozano*,
     809 F. Supp. 2d 197 (S.D.N.Y. 2011), *aff'd sub nom. Lozano v.*
     *Alvarez*, 697 F.3d 41 (2d Cir. 2012), *aff'd on other grounds*, 134 S.
     Ct. 1224 (2014) ................................................................7-8, 12, 13, 23, 31

*In re Robinson*,
     983 F. Supp. 1339 (D. Colo.1997) ............................................ 7, 13, 26, 31

*Krefter v. Wills*,
     623 F. Supp. 2d 125 (D. Mass. 2009) .......................................................13

*Lomanto v. Agbelusi*,
     22-CV-7349, 2023 WL 4118124 (S.D.N.Y. June 22, 2023) ................. 27, 38

*Margain v. Ruiz-Bours*,
     592 F. App'x 619 (9th Cir. 2015) ............................................................23

*Matute-Castro v. Jimenez-Ortiz*,
     No. 15-cv-04568 (DLI)(JO), 2016 WL 8711076
     (E.D.N.Y. Aug. 26, 2016) ......................................................................39

*Monzon v. De La Roca*,
     910 F.3d 92 (3d Cir. 2018) ....................................................................15

*Moura v. Cunha*,
     67 F. Supp. 3d 493 (D. Mass. 2014) ............................................ 14, 24, 39

*Reyes Olguin v. Cruz Santana*,
     No. 03 CV 6299 JG, 2005 WL 67094 (E.D.N.Y. Jan. 13, 2005) .................26

*Rodriguez v. Noriega*,
     732 F. Supp. 3d 990 (D. Minn. 2024) .......................................................36

*Taveras v. Morales*,
     22 F. Supp. 3d 219 (S.D.N.Y. 2014) ............................................ 26, 31, 38

*Veira v. De Souza*,
     22 F.4th 304 (1st Cir. 2022) .................................................................. 14, 17

*Wojcik v. Wojcik*,
     959 F. Supp. 413 (E.D. Mich. 1997) .......................................................22

*Yaman v. Yaman*,
     730 F.3d 1 (1st Cir. 2013) ......................................................................12

iv

*Zuker v. Andrews*,
    2 F. Supp. 2d 134 (D. Mass. 1998) ................................................................. 36


**Statutes & Other Authorities:**

22 U.S.C. § 9001 ........................................................................................................ 5

22 U.S.C. § 9003(a) .................................................................................................... 1

22 U.S.C. § 9003(b) .................................................................................................. 15

22 U.S.C. § 9003(f)(3) ............................................................................................. 15

28 U.S.C. § 1291 ......................................................................................................... 1

28 U.S.C. § 1331 ......................................................................................................... 1

Fed. R. App. P. 4 ......................................................................................................... 1

Fed. R. App. P. 26(a)(1)(c) ........................................................................................ 1

Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S.
    No. 11,670, 1343 U.N.T.S. 89, *reprinted,* 51 Fed. Reg. 10,494
    (Mar. 26, 1986) ...................................................................... 5, 8, 16-17

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this case under 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331. This Court has jurisdiction of this appeal under 28 U.S.C. § 1291. Appellant timely filed this appeal on March 31, 2025[1], seeking review of the honorable U.S. District Judge Allison Burroughs' ("District Court") February 28, 2025 Findings of Fact and Conclusions of Law (the "Order"), which was a final order or judgment disposing of all the parties' claims.

---

[1] Under Fed. R. App. P. 4, a notice of appeal must be filed with the lower court within 30 days after entry of the judgment or order appealed from. Thirty days from entry of the Order was a Sunday, and this appeal was timely filed the next business day. *See* Fed. R. App. P. 26(a)(1)(c).

I.      Whether the District Court committed legal error by comparing the relative strength of the Child's familial and community ties in the United States to those he might have in Brazil, instead of focusing solely on the strength of his ties in the United States—which is what is relevant to the "well settled" or "now settled" defense.

II.     Whether the District Court's findings of fact and ultimate determination that the Child was not "well" or "now settled" was clear error, where the evidence overwhelmingly demonstrated that the Child was attending school, engaged in his community, learning English, and was surrounded by supportive immediate and extended family.

**STATEMENT OF THE CASE**

The parties, Jessica Silveira da Silva ("Appellant" or "Mother") and

Edervaldo Rodrigues da Silva ("Appellee" or "Father") were married in Brazil on

May 1, 2011, and had a child (the "Child" or "A.R.") in 2014. Appendix ("Appx")

A663 ("Findings of Fact and Conclusions of Law, dated February 28, 2025"). The

couple separated in 2016 when the Child was two years old. AppxA664. A.R.

primarily lived with Mother, and Father did not provide for the Child's physical,

emotional, or financial needs during this time. AppxA80 ("Exhibit A –

Respondents' Proposed Findings of Fact") at 6, 8, 10; AppxA81 at 11.

Although they had been separated for years, Mother and Father officially

divorced on December 10, 2021, and reached an agreement as to custody of A.R.

at that time (the "Custody Agreement"). AppxA665. By the terms of the Custody

Agreement, Mother received custody of A.R. and Father was permitted visitation

with A.R. on alternative weekends, half of vacation, and school breaks, accounting

to 30 cumulative days annually, and alternate holidays. AppxA665; AppxA768-

A778 ("Divorce Hearing Minutes (Trial Ex. JX-11)"). Father did not consistently

exercise his visitation rights. AppxA666.

In April of 2022, Mother and A.R. relocated to the United States and have

resided in Lowell, Massachusetts since that time. AppxA668. Mother has an

application for asylum pending before U.S. Citizenship and Immigration Services.

AppxA671; AppxA692-A719 ("Respondent Silveira da Silva and Child's pending asylum application (Trial Ex. JX-2)"). Since arriving in the United States, A.R. has lived with his Mother and his stepfather, Gilberto Lucas ("Mr. Lucas" or "Stepfather"). AppxA668. In addition to his Mother and Stepfather, A.R. lives in close proximity to Mr. Lucas's brother, Gilmar Torres Dos Santos ("Uncle") and his wife, Bruna Coutinho ("Aunt"), who view A.R. as their nephew[2], as well as other members of Mr. Lucas's extended family. AppxA668-A669. A.R. sees his family multiple times each month, and they consistently gather for holidays, birthdays, and other celebrations. AppxA669

A.R. has attended Frederic T. Greenhalge Elementary School since fall 2023 and is presently in fourth grade. AppxA669. He is rapidly learning English and is making great strides in school. AppxA670. A.R. also attends bible study regularly, and has made friends with other local children. AppxA671. He participates in soccer, and has built relationships with other children in his community, including some who live in his neighborhood. AppxA671. Many children at A.R.'s school, on his soccer team, and at his church are members of Lowell's large Brazilian community. AppxA670-A671.

---

[2] AppxA379 (Trial Tr. Day 2 at 45:10-11 (**Q** Is [A.R.] one of your family members? **A.[Coutinho]** He's my nephew.)); AppxA403 (69:3-4 (**Q** Is [A.R.] your nephew? **A.[Jalmar]**[*sic*] Yes.)).

On May 14, 2024, over two years after A.R. arrived in the United States, Father initiated proceedings in the United States under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted* 51 Fed. Reg. 10,494 (Mar. 26, 1986) (the "Convention"), and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, *et seq.*, by filing a Complaint and Petition for Return of the Minor Child in the District of Massachusetts. AppxA679.

A bench trial was held over three days on October 15-17, 2025 before the District Court. AppxA662. During the bench trial, Mother put forth the affirmative defense that under the Hague Convention, a child should not be returned where the petition was filed in the jurisdiction where the child resides more than one year after the alleged wrongful retention and the child is "now settled in its new environment." Hague Convention, art. 12. AppxA677-A686.

On February 28, 2025, the District Court issued Findings of Fact and Conclusions of Law (the "Order") holding that Mother had not met her burden of proving that A.R. was well-settled (also referred to as "now settled) in the United States under Article 12 of the Hague Convention. AppxA689. The District Court ordered that A.R. be returned to Brazil at a reasonable date and time mutually agreed upon by the parties, and on March 13, 2025, entered Final Judgment in

accordance with the Order. AppxA689-A690; AppxA494-A495 ("Judgment, dated March 13, 2025").

Mother timely appealed the Order and Final Judgment to this Court. AppxA513-519 ("Notice of Appeal, dated March 31, 2025").

## SUMMARY OF THE ARGUMENT

This appeal is about the proper application of the well-settled defense, which may be asserted where more than one year passed between the removal of the child from the country of habitual residence and the filing of a petition under the Hague Convention. The defense exists because after a child has become settled in a new environment, a forced return will only cause disruption and harm to the child. Removal severs the connections the child has to their home that they have spent years building. Where there is evidence that the child's life in their environment is secure and stable, the likelihood that return will ultimately harm the child increases. *See, e.g.*, *Alcala v. Hernandez*, 826 F.3d 161, 170 n.6 (4th Cir. 2016); *In re Robinson*, 983 F. Supp. 1339, 1345 (D. Colo.1997). It is paramount that decisions regarding the well-settled nature of a child are legally and factually sound, as the ultimate determination leads directly to a child being forced to leave their present home.

A.R. is well-settled under any standard, including—as relevant here—the articulated standard for finding a child settled under the Hague Convention. "[T]he child's life does not have to be perfect to for him to be settled." *In re Lozano*, 809 F. Supp. 2d 197, 233 (S.D.N.Y. 2011). Instead, a child is settled if they have "significant emotional and physical connections demonstrating security, stability, and permanence" in their environment. *Lozano v. Alvarez*, 697 F.3d 41, 56 (2d Cir.

2012) (quoting U.S. Dep't of State, Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,509 (Mar. 26, 1986) [hereinafter State Department Analysis]). At the time of trial, A.R. had been in the United States for two and a half years, and at ten years old had formed meaningful connections to his community. A.R. lives with his Mother and Stepfather in Lowell, Massachusetts, where they have resided since A.R.'s arrival in the United States. A.R.'s Mother and Stepfather have a loving and stable relationship, and are both employed and earn enough to provide for A.R.

A.R. also previously shared his home with an Aunt and Uncle, and he spent time with them every day doing activities like cooking, doing his homework, and playing video games. Even though that they no longer live in the same household, Aunt and Uncle see A.R. at least twice a month, when they do fun activities like sledding, going to the beach, or playing at the park. Through Stepfather, A.R. also has other aunts, uncles, and cousins in Massachusetts, including one cousin around his age. His extended family gathers frequently to celebrate holidays, birthdays, and special occasions.

A.R.'s connections to Massachusetts also extend to his friends and community ties. He has made friends in school and gets along well with his peers. He also has friends in his apartment building and friends that play video games and soccer with him. He fosters his love of soccer through taking soccer lessons in his

neighborhood. A.R. attends church twice a month, and participates in a youth group there, where he plays with other children.

As so many children did during the COVID-19 pandemic, A.R. struggled academically while in Brazil. At the time he came to the United States, he could not read or write in his native Portuguese, let alone in English. While A.R. continued to experience some of these difficulties in school after arriving in the United States, he has shown marked improvement. A.R.'s third grade teacher testified that his English skills had improved, and that he participated in her class in English. By the middle of the last school year, A.R. was meeting expectations for classroom conduct, despite previously experiencing behavioral issues such as talking out of turn and occasionally disrupting other students. Indeed, only two or three behavioral incidents were reported to his Mother in his second year of school—a sharp decrease from his prior year. A.R. has also shown an increased engagement in the classroom and a greater motivation and willingness to learn. He advanced with his class each year and continues to show improvement.

In short, A.R. is a well-adjusted, well-settled child, and the District Court erred in finding otherwise. First, the District Court committed legal error when it compared the strength of the Child's familial and community relationships in the United States to the relationships he might have in Brazil. Such a comparative inquiry should play no part in assessing the "well settled" defense, yet it appears to

have tipped the scales against A.R. in this case. This improper finding tainted the rest of the District Court's well-settled analysis. The District Court considered the relative strength of the Child's familial and community ties in deciding multiple prongs of the well-settled test, including in its analysis of the stability and duration of the Child's residence, the existence of friends or relatives in the new area, and the Child's participation in community or extracurricular activities. The ultimate conclusion that A.R. was not now settled is entirely intertwined with the District Court's legal error, and requires reversal.

Even if the District Court had applied the correct legal standard, it was nonetheless clear error to find that the Child was not well-settled in the United States on this record. The Order found that two of the seven major factors considered weighed in favor of finding the Child now settled. The other factors the District Court analyzed primarily centered around A.R.'s familial and community ties and his performance in school. In reviewing the evidence presented at trial on these elements, the District Court ignored or—without explanation or justification—did not credit testimony and documents that support A.R.'s strong relationships and upward academic trajectory. Given that these facts underpinned the majority of the remaining factors the District Court considered, these clear errors led to the incorrect ultimate conclusion—that a child who lives in a stable home surrounded by loving family, who has built a community, and who has made

great strides in school is somehow not well-settled in the United States. Upon

proper consideration of the evidence, the District Court's holding was clear error.

## LEGAL STANDARDS

## I.     Law of the Well-Settled Defense

Under the Hague Convention, petitioner bears the burden of proving by a preponderance of the evidence that the child was wrongfully removed before a court will return the child to its country of habitual residence. Once that burden is satisfied, if the petitioner did not file their petition in the United States within a year of the removal, the respondent may assert the "now-settled" defense, which is often colloquially referred to as the "well-settled" defense. *See Yaman v. Yaman*, 730 F.3d 1, 12-16 (1st Cir. 2013). The Hague Convention explains the "now settled" defense as follows:

> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the proceeding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Convention, art. 12.

The Convention does not define what it means for a child to be "settled." The natural meaning of the term "suggests a stable and permanent relocation of the child." *Lozano*, 697 F.3d at 56. The Department of State has interpreted "settled" to require "substantial evidence of the child's significant connections to the new country." *Id.* (quoting State Department Analysis). Thus, "settled" in this context

means "that the child has significant emotional and physical connections demonstrating security, stability, and permanence in its new environment." *Id.*

The rationale behind the well-settled defense is that after a child has become settled, a forced return will only cause disruption and further harm to the child. *Krefter v. Wills*, 623 F. Supp. 2d 125, 136 (D. Mass. 2009) (citing *Walsh v. Walsh*, 221 F.3d 204, 220 n.14 (characterizing such disruption as "an inevitable consequence of removal")); *see also Alcala*, 826 F.3d at 170 n.6 ("Ordering a child's return will generally sever whatever immediate connections a child has to his or her new environment. If those connections are significant enough that the child's life is secure, stable, and permanent, a return order is likely to be harmfully disruptive."); *In re Robinson*, 983 F. Supp. at 1345 ("It would seem that, just as it is harmful to wrongfully remove the children from their habitual residence, it may also be harmful to remove them again if they have become connected to or 'settled' in the new environment.").

Although the elements of the well-settled defense are not defined by the Convention, case law has created a set of factors that typically play into the well-settled analysis, including: (1) the child's age; (2) the stability and duration of the child's residence; (3) whether the child attends school or day care consistently; (4) whether the child has friends and relatives in the new area; (5) the child's participation in community or extracurricular school activities, such as team sports,

youth groups, or school clubs; and (6) the respondent's employment and financial stability. *See* AppxA680 (citing *Moura v. Cunha*, 67 F. Supp. 3d 493, 499-500 (D. Mass. 2014)). These are guiding factors, and a district court "may consider any relevant fact" in determining if a child is "now-settled." *See da Silva v. de Aredes*, 953 F.3d 67, 76 (1st Cir. 2020). The defense requires the court to identify the proper standard to apply, and then "answer the factual question[ ] of . . . whether the abducted child is 'now settled.'" *Id.* at 72. Under the Convention, "[c]ourts look to the totality of the circumstances in determining whether a child is now settled." *Id.* at 75.

## II.   Standard of Appellate Review

In cases arising under the Hague Convention, an appeals court reviews legal issues including interpretation of the Convention, *de novo*. *Veira v. De Souza*, 22 F.4th 304, 308 (1st Cir. 2022). This includes the district court's determination of the "appropriate standard to ascertain whether a child is now settled[.]" *da Costa v. de Lima*, 94 F.4th 174, 181 (1st Cir. 2024). The First Circuit has held that "the question of whether the district court erred in concluding [respondent] had not met [its] burden of proof as to any of [its] defenses is a mixed question of law and fact" that is reviewed for clear error. *da Silva*, 953 F.3d at 72.

**ARGUMENT**

## I.  The District Court Properly Found that the Well-Settled Defense Was Available

The "settled" defense is available where, "at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is," a period of more than one year "has elapsed from the date of the wrongful removal or retention." Hague Convention, art. 12. The lower court appropriately determined that Mother could assert the well-settled defense in this case.

As the District Court properly found, the "commencement of proceedings" is defined as the filing of an action pursuant to 22 U.S.C. § 9003(b). AppxA678. Section 9003(b) requires a person seeking to initiate judicial proceedings to file a petition in a court "authorized to exercise its jurisdiction in the place *where the child is located* at the time the petition is filed." 22 U.S.C. § 9003(b), (f)(3) (emphasis added). The District Court correctly noted that filing an application with an authority in the country of origin does not suffice to commence Hague Convention proceedings. AppxA678; *see also, e.g.*, *Monzon v. De La Roca*, 910 F.3d 92, 96, 99 (3d Cir. 2018) (proceedings were commenced when action was filed in U.S. court where child was located, not when petitioner filed an application in Guatemala). Based on these authorities, and a stipulation of the parties, the



AppxA679.

AppxA679. Instead,

AppxA679. The one-year

period "is not subject to equitable tolling," *Lozano*, 573 U.S. at 18, and therefore

AppxA679-A680; *see also Darín v. Olivero-Huffman*, 746 F.3d 1, 20 n.27 (1st Cir. 2014) (recognizing "now-settled" defense)).

## II. The District Court Legally Erred by Comparing the Child's Family and Community Ties in the United States to Those that Might Exist in Brazil

The appellate court considers *de novo* whether the district court applied the "appropriate standard to ascertain whether a child is now settled[.]" *da Costa*, 94 F.4th at 181. The Hague Convention does not define "settled," and thus the legal standard for determining whether a child is well-settled is judicially-created. Guided by interpretation from the Department of State that demonstrating a child is "settled" requires "substantial evidence of the child's significant connections to the new country," the First Circuit has set forth a broad standard that applies to the well-settled defense. *See* U.S. Dep't of State, Hague Int'l Child Abduction

Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,509 (Mar. 26, 1986).

Under this standard, a district court may consider "any relevant fact" and must "look to the totality of the circumstances" in making the determination. *da Silva*, 953 F.3d at 75-76. The analysis, however, must focus **only** on whether, when considering the child's **current situation**, he has sufficiently significant connections to the **United States:** the court "must focus on the significance of the child's connections to her or his new environment" and "s*hould not compare the child's current situation with her or his prior situation or expected situation if returned*." *Alcala*, 826 F.3d at 171 (emphasis added); *see also Aguirre v. Villatoro*, Civ. Ac. No. 1:23-cv-302, 2024 WL 5191968, at *5 (E.D. Va. Dec. 20, 2024) (finding the child well-settled). This makes sense, as it would almost always be the case that a child would have more ties to the country of habitual residence than in the country of removal. Were the appropriate standard comparing the significance of the child's connections to each country, the analysis under the settled defense would essentially be futile.

Should a court nonetheless conduct an impermissible comparison between a child's life in the United States versus that in the country of habitual residence, this constitutes not only legal error to be reviewed *de novo* (*see Veira*, 22 F.4th at 308; *da Costa*, 94 F.4th at 181), but reversible legal error because the application of the

incorrect standard tainted the District Court's ultimate finding that the Child was not well-settled.

Here, the District Court committed such an error. When considering stability and duration of the Child's residence, ████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ AppxA681-682. Although the District Court found █████████████████████████████████████ ████████████████████████████████ AppxA682, AppxA685, the Court then improperly diminished these relationships by noting that ██████████████████████████████████████ █████████████. AppxA682. The District Court, for example, noted how ███████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ AppxA682-A683 (emphasis added).

This was legal error. The District Court makes this impermissible comparison at the beginning of its analysis of the well-settled defense, which then carried through the rest of its analysis. Throughout the Order, the District Court ████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████

Appx682 ███████████████████████████████████

███████████████████████████████████████

██████; AppxA682-A683 ███████████████████

███████████████████████████████████████

███████████████████ AppxA684 █████████████

███████████████████████████████████████

████████████(emphasis added).

Additionally, when examining the separate well-settled factor of whether the

child has friends and relatives in the new area, the lower court concluded that ████

███████████████████████████Despite this conclusion, the Order

then explicitly refers back to the prior impermissible comparison, stating that "██

███████████████████████████████████████

██████████████████" AppxA684-685 (emphasis added).

Close review of the District Court's reasoning makes clear how much this

erroneous comparative assessment affected the ultimate conclusion that the Child

was not well-settled. *See* AppxA682-685. In conducting the well-settled analysis,

the District Court considered seven factors. ██████████████████

███████████████████████████████████████

█████████████████ AppxA681-A682, AppxA685.██████████

████████████████████AppxA685-686.████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████. AppxA682-A685. Far from being harmless, the legal error significantly affected the District Court's ultimate finding. The District Court itself said that the decision was a ██████████████████████████ AppxA686. The error tipped the scales in an admittedly close case and must be remedied.

### III.   The Ultimate Conclusion that the Child Is Not Well-Settled Was Erroneous, Both Due to Errors in Factual Findings, and Errors Weighing the Evidence

Should the Court conclude that there was no legal error committed by the lower court, the District Court's ultimate holding must still be overturned as clearly erroneous. *See da Silva*, 953 F.3d at 72.  Because the question of whether a child is well-settled is a mixed question of law and fact, this Court may undertake its own weighing of the factual evidence to determine whether the conclusion that the Child was not well-settled was clearly erroneous. *Id.* Further, the factual findings underpinning the determination of the well-settled defense are also reviewed for clear error. *See da Costa*, 94 F.4th at 181.

Here, the District Court committed clear error both in its factual findings and in its ultimate determination that Appellant did not meet her burden of proof of

demonstrating that the Child was well-settled. These questions are inextricably intertwined, because the determination of whether a child is settled invariably rests on the factual findings. The lower court impermissibly ignored or discredited without justification the overwhelming evidence in the record supporting that the Child is settled in Massachusetts. This includes, but is not limited to, evidence that:

- Mother is actively involved in the Child's life in the United States, and even Petitioner believes she is a good mother (*see, e.g.*, AppxA229 (Trial Tr. Day 2 at 79:16-24); AppxA664; AppxA668-A671);

- Stepfather and Child have a close relationship consisting of many typical parent-child activities like learning to ride a bike, providing financial assistance, playing video games, going to church, and going on family outings (*see, e.g.*, AppxA412-A413 (Trial Tr. Day 2 at 78:10-79:2); AppxA794; AppxA799; AppxA834);

- The Child has important familial relationships with extended family, including Aunt, Uncle, who view him as their nephew, as well as other family members who he sees frequently (*see, e.g.*, AppxA380-A388; AppxA403-A408; AppxA789; AppxA791);

- The Child has friends at school, including at least one that he spends time with outside of school (*see, e.g.*, AppxA419; AppxA788);

- The Child has friends at church, and friends in his community and apartment building with whom he does activities like playing sports, playing video games, and attending neighborhood parties (*see, e.g.*, AppxA331; AppxA342; AppxA419-A422);

- The Child had pre-existing educational struggles before coming to the United States (*see, e.g.*, AppxA414-A415; AppxA715);

- The Child's academic performance and behavior in school have been on an upward trajectory, especially during the Child's second year of school in Massachusetts, where he met expectations behaviorally and was able to communicate in English (*see, e.g.*, AppxA398; AppxA417-A420; AppxA436-A442; AppxA449); and

- The Child engages in extracurricular activities like attending church youth group multiple times each month, playing soccer in the neighborhood, and taking soccer lessons (*see, e.g.*, AppxA420-A422; AppxA786).

Importantly, Father provided no evidence to call any of the facts laid out herein into question. *See, e.g.*, *Wojcik v. Wojcik*, 959 F. Supp. 413, 421 (E.D. Mich. 1997) (finding the child well-settled where the father provided "no evidence" to call mother's testimony regarding the child's stability into question). Failing to properly credit the evidence constitutes clear error.

A. <u>The Child is Old Enough to Form Meaningful Attachments to His Home in the United States</u>

A.R. arrived in the United States just before his eighth birthday. AppxA668. He has spent the majority of his school years in the United States and, at ten years of age, A.R. is undoubtedly old enough to form meaningful connections in the U.S. *See In re Lozano*, 809 F. Supp. 2d 197, 232 (S.D.N.Y. 2011) (holding five-year-old child "is old enough to form attachments"), *aff'd sub nom. Lozano v. Alvarez*, 697 F.3d 41 (2d Cir. 2012), *aff'd on other grounds*, 134 S. Ct. 1224 (2014); *Castellanos Monzón v. De La Roca*, Civ. Ac. No. 16-0058, 2016 WL 1337261, *13 (D.N.J. Apr. 5, 2016) (holding five-year old child capable of forming "memories of the United States and more ties to the country"); *Garza-Castillo v. Guajardo-Ochoa*, No. 2:10-CV-00359-LDG, 2012 WL 523696, *5-6 (D. Nev. Feb. 15, 2012) (finding five-and-a-half year old child to be settled); *Edoho v. Edoho*, No. H-10-1881, 2010 WL 3257480, at *6 (S.D. Tex. Aug. 17, 2010) (finding children aged four and six to be settled); *Margain v. Ruiz-Bours*, 592 F. App'x 619, 620-21 (9th Cir. 2015) (affirming finding that five-year old child was "settled"). In *da Costa*, the District Court found a six-year-old child was "clearly old enough to allow meaningful connections to the new environment to evolve." 2023 WL 4049378, at *8 (internal citations omitted). As the District Court properly found, ██████

██████████████████████████████ AppxA681 ██████████████

███████████████████████████████████

████████████ (internal quotations and citations omitted)).

B. <u>The Child Has Lived in a Stable Environment for Over Two Years</u>

One factor in the well-settled analysis is "the stability and duration of the child's residence in the new environment . . ." *Moura*, 67 F. Supp. 2d at 499-500. As the District Court noted, this is "ordinarily the most important" factor considered in the settled analysis. AppxA680 (citing *Moura*, 67 F. Supp. 3d at 499-500); *see also Gwiazdowski v. Gwiazdowska*, No. 14-cv-1482 (FB)(RER), 2015 WL 1514436, at *4 (E.D.N.Y. Apr. 3, 2015); *In re D.T.J.*, 956 F. Supp. 2d 523, 535 (S.D.N.Y. 2013); *In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009).

A.R. has resided in the same area for the two and a half years since he arrived in the United States. AppxA682. He has only moved once during that time, and that move was to another apartment in the same town. AppxA682. He has consistently lived with Mother and Stepfather during this period, and has occasionally lived with Aunt and Uncle. AppxA682. These facts demonstrate that the Child's residence in the United States has been remarkably stable. AppxA682 ("[T]hese facts play a significant role in the settled inquiry") (internal quotations and citations omitted); *see also, e.g.*, *Aguirre*, 2024 WL 5191968, at *5 (finding the child's residence stable where he lived with his father and father's partner, who had been together for years and planned to marry, where he had lived at his current

residence for two years, and where father and father's partner both took care of the child).

The District Court discounted the stability and security of the Child's residence by considering the Child's relationships and support system—which it found lacking—as part of this factor. But this was in error, as those elements actually support that the Child lives in a stable environment. The evidence shows that Mother is a loving parent who has been A.R.'s primary caretaker since the time she and Petitioner separated. AppxA664. She is actively involved in A.R.'s life, including taking him to church, attending parent-teacher conferences at school, caring for the Child's health, and ensuring he does his homework. AppxA668-A671. Even Petitioner testified that Mother is a good parent to A.R.[3]

Additionally, as discussed in more detail in Section III.D, *infra*, A.R. has a robust support system outside of Mother. Stepfather and Child have a close relationship. Stepfather has treated A.R. like his own child, providing for him financially and spending time together both one-on-one and as a larger family. Aunt and Uncle also previously participated in A.R.'s care, and currently see the child at least twice a month. Aunt also testified that she and Uncle would assist

---

[3] AppxA299 (Trial Tr. Day 1 at 79:16-24) ("**Q.** Mr da Silva, you believe that [A.R.] and [Mother] have a good relationship. Is that right? **A.[Father]** As far as I know, yes. **Q.** And do you believe that [Mother] is a good mother to [A.R.]? **A.[Father]** Yes.").

financially to help A.R. if that ever became necessary. AppxA669. *See, e.g.*, *Reyes Olguin v. Cruz Santana*, No. 03 CV 6299 JG, 2005 WL 67094, *8 (E.D.N.Y. Jan. 13, 2005) (finding children had a stable residence where mother's roommate assisted with picking the children up from school and watching them after school, even where the children only had "some contact" with relatives in the area).

This factor counsels strongly against returning the Child to Brazil. There is ample evidence that A.R. has a stable life in the United States, and that he has made significant connections here. Requiring his return will "sever" these connections and be "harmfully disruptive" to the Child. *Alcala*, 826 F.3d at 170 n.6; *see also In re Robinson*, 983 F. Supp. at 1345.

C. The Child Has Consistently Attended School, and Has Improved Academically While in the United States

The evidence also shows that while the Child initially struggled in school in the United States, those struggles existed before he came to the United States, and he has made great strides while here. AppxA684 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Where a child shows academic improvement, or that they are on an upward trajectory academically, this factor can still counsel toward finding the child is settled. *See Taveras v. Morales*, 22 F. Supp. 3d 219, 237 (S.D.N.Y. 2014) ("consistent attendance at school and academic improvement strongly favor a finding" that a child is settled); *In re D.T.J.*, 956 F. Supp. 2d at 525, 539 (finding a child settled in

part because the child was "academically on a strong upward trajectory."). This is particularly true where the child may already have struggled academically in their country of habitual residence. *See, e.g.*, *Lomanto v. Agbelusi*, 22-CV-7349, 2023 WL 4118124, *15-16 (S.D.N.Y. June 22, 2023) (where child received poor to mediocre grades in Spain and risked repeating a grade, but showed improvement in the United States, academic performance supported the well-settled defense). The District Court erred in its analysis by failing to consider evidence of the Child's improvement in school over time.

Here, the evidence shows that A.R. was eight when he arrived in the United States and had only "studied at school for a little time" in Brazil, and had done some lessons from home due to the pandemic.[4] Despite this, A.R. could not read or write in either English **or his native Portuguese** when he came to the United States.[5] Appellant acknowledges that when A.R. began attending school at Greenhalge Elementary, he had both behavioral incidents and academic struggles. This is understandable considering both his prior lack of time in a classroom with

---

[4] AppxA414 (Trial Tr. Day 2 at 80:18-20 ("**Q**. Did [A.R.] attend school in Brazil? **A.[Mother]** He went but because of the pandemic he studied at school for a little time.")); AppxA415 (81:8-10 ("**Q.** You said it was about a year that he was going to school at home? **A.[Mother]** Yes. That's it, that's what I remember."))
[5] AppxA715 (Trial Tr. Day 2 at 81:11-17 ("**Q.** Was [A.R.] able to read in Portuguese when you moved to the United States? **A.[Mother**] No. He didn't have the opportunity to be -- to learn how to read and write while he was in Brazil. **Q.** Okay. So is it correct that [A.R.] also did not know how to write in Portuguese when you moved to the United States? **A.** Yes, correct."))

other students and his pre-existing struggles to learn to read and write—these issues would not magically disappear overnight. But the testimony shows that A.R. has been on an upward trajectory both in terms of his behavior in the classroom and his academic performance.[6]

Although Appellee and the District Court made much of A.R.'s behavioral incidents at school, his third-grade teacher, Ms. Sarah Hoey, testified that much of the "disruptive behavior" A.R. displayed in her class was "silly" and consisted of "getting off track" and "talking to peers." AppxA441 (Trial Tr. Day 3 at 16:4); AppxA449 (Trial Tr. Day 3 at 24:10-11). Further, the evidence shows that A.R. demonstrated marked improvement in this arena as well. Appellee introduced messages purportedly from A.R.'s school addressing his behavior,[7] but these messages were entirely from A.R.'s first year at school in the United States. There is no evidence in the record that these behavioral issues continued into the Child's second year at Greenhalge Elementary, and in fact Mother testified that she only

_____

[6] AppxA441 (Trial Tr. Day 3 at 16:5-7 (**[Ms. Hoey]** "And then again towards the middle of the year, his behavior was – he was meeting expectations of the classroom, rules and responsibilities.")); AppxA442 (Trial Tr. Day 3 at 17:17-19 (**[Ms. Hoey]** "… I can say that expressive language, his willingness to participate in class, vocabulary he was using, sentences that he was forming all improved throughout the year."))

[7] Appellant notes that these messages were not introduced for the truth of the matter asserted due to hearsay concerns.

received two or three messages about A.R.'s behavior during his second year of school.[8]

Ms. Hoey's testimony also supports that A.R.'s academic performance has improved during his time in the United States. While in her classroom, A.R.'s "motivation and willingness to participate and being responsible for his learning did begin to increase." AppxA438 (Trial Tr. Day 3 at 13:10-12). She clarified that he became better able to stay on task and would seek out teacher assistance and ask for clarification of expectations. AppxA439 (Trial Tr. Day 3 at 14:19-24). A.R. learned strategies to avoid distractions and was better able to complete his schoolwork. AppxA440 (Trial Tr. Day 3 at 15:14-19). By the middle of the year, "he was meeting expectations of the classroom, rules and responsibilities." AppxA441 (Trial Tr. Day 3 at 16:5-7). Ms. Hoey also testified that A.R. "get[s] along well" with his peers, and that he enjoyed being "an interpreter of sorts" for other Brazilian students in the classroom who were "struggling to understand." AppxA441 (Trial Tr. Day 3 at 16:11, 16-19); *see* AppxA788 (Photograph of Child with classmates (Trial Ex. JX-15)"). Ultimately, A.R. progressed with his class and is currently in fourth grade. AppxA442 (Trial Tr. Day 3 at 17:23-25).

---

[8] AppxA418 (Trial Tr. Day 2 at 84:6-9) ("**Q.** All of those messages but one were from [A.R.'s] first year in school. How many messages did you get during his second year of school? **A.[Mother]** I would say approximately two or three.").

The Child also made great strides in his English learning at school. At the time he arrived in the United States, he could not read or write in Portuguese, let alone in English. AppxA415 (Trial Tr. Day 2 at 81:11-17). By the time of trial, A.R. had shown improvement in his vocabulary, sentence structure, and expressive language while in the classroom. AppxA442 (Trial Tr. Day 3 at 17:17-19). He is now able to communicate in English with his teachers and his peers. AppxA398 (Trial Tr. Day 2 at 64:11-12); AppxA419 (Trial Tr. Day 2 at 85:1-15); AppxA420 (Trial Tr. Day 2 at 86:2-4); AppxA442 (Trial Tr. Day 3 at 17:20-22). The fact that the Child has other Brazilian children in his class also supports this factor. In *da Costa*, the District Court emphasized that even where a child "is still learning English, which likely makes it more difficult to communicate with his schoolmates and teachers," having a strong community that speaks the native language of the child can show "that he is already settled in his new environment and will only become more so as he continues to get comfortable with English." 2023 WL 4049378, at *9. That is the case here, where there are other Portuguese speakers in A.R.'s school, and in fact he often helped his fellow classmates with understanding assignments. AppxA436-AppxA437 (Trial Tr. Day 3 at 11:17-12:1); AppxA441 (Trial Tr. Day 3 at 16:14-19).

A.R. has also been on an upward trajectory in terms of consistent school attendance. At the time of trial, the Child had missed school during the current

school year only due to illness (with a doctor's note) and so that Mother could attend her deposition in this matter. AppxA417-A418 (Trial Tr. Day 2 at 83:2-84:2).

"[T]he child's life does not have to be perfect to for him to be settled." *In re Lozano*, 809 F. Supp. 2d at 233. When taken as a whole, the evidence depicts a child whose education in Brazil was stunted by the COVID-19 pandemic, leading him to be behind academically when he came to Massachusetts. Notwithstanding these challenges, A.R. has been on a consistent upward trajectory in terms of attendance, academic performance, grasp of the English language, and behavior in the classroom. "Academic improvement strongly favor[s] a finding" that a child is settled, and this situation is no different. *See Taveras*, 22 F. Supp. 3d at 237; *In re D.T.J.*, 956 F. Supp. 2d at 525, 539. Further, the Child's improvement in school where he previously struggled in Brazil is yet another example of how ordering his return will be "harmfully disruptive" to both his life overall and his academic success. *See Alcala*, 826 F.3d at 170 n.6; *In re Robinson*, 983 F. Supp. at 1345. In viewing the totality of the situation, this factor too weighs in favor of finding the Child is settled in Massachusetts.

D. The Child Has Friends and Relatives in Massachusetts with Whom He Has Strong Relationships

The evidence demonstrates that the Child has many friends and family members in the United States, and that these people are an integral part of his

community. ██████████████████████████

██████████ (AppxA685), but the evidence actually demonstrated a far closer relationship than that acknowledged by the court. Mother testified that Stepfather bought A.R. a bike and taught him how to ride. AppxA413 (Trial Tr. Day 2 at 79:2-5). Stepfather also bought sleds for the family, and A.R., Mother, Stepfather, Aunt, and Uncle have all gone sledding together in the winter. AppxA384 (Trial Tr. Day 2 at 50:19-24); *see* AppxA799 ("Photograph of Child and Respondent Lucas (Trial Ex. JX-26)"). A.R. and Stepfather go get their hair cut together, and play video games because that is one of A.R.'s favorite activities. AppxA412 (Trial Tr. Day 2 at 78:10-16). Stepfather takes A.R. to the park and the beach. AppxA412 (Trial Tr. Day 2 at 78:17-24); *see* AppxA794 ("Photograph of Child and Respondent Lucas (Trial Ex. JX-21)"). The family also regularly attends church together. AppxA412-A413 (Trial Tr. Day 2 at 78:25-79:1). In other words, A.R. has a "good" and "healthy" relationship with his Stepfather that is just like the typical relationship between a father and son.[9] *See also, e.g.*, *Aguirre*, 2024 WL 5191968, at *5 (finding the child settled where father's partner cared for the child

---

[9] Indeed, A.R. spends significantly more time with Stepfather than he spent with the Appellant during the period after the parties' separation and before A.R. came to the United States. During that time, Appellant's visitation rights, which he did not consistently exercise, allowed him visits with A.R. on alternating weekends and certain holidays amounting to about 30 days per year. AppxA665; AppxA768-A778 ("Divorce Hearing Minutes (Trial Ex. JX-11)"). In contrast, A.R. has lived with Stepfather for over two years, and they spend substantial time together.

after school and helped with his homework); *Anderson v. Acree*, 250 F. Supp. 2d 876, 882-83 (S.D. Ohio 2002) (evidence that the child wanted to change her last name to her stepfather's name supported a finding of that the child was settled).

A.R.'s relationships with other family members also support that he is settled in Massachusetts. Aunt has spent many mornings and evenings sharing meals with A.R. AppxA380 (Trial Tr. Day 2 at 46:16-20). Uncle has similarly spent time one-on-one with A.R. after school while Mother was at work. AppxA403 (Trial Tr. Day 2 at 69:20-21). Uncle would often cook the Child dinner, play video games with him in the evenings, and help with his homework. AppxA403-A405 (Trial Tr. at Day 2 69:23-71:9). Both Aunt and Uncle routinely attend family outings with A.R., Mother, and Stepfather, where the family unit sleds in the park, visits the beach, dines at restaurants, and shops at the mall. AppxA380-A381 (Trial Tr. Day 2 at 46:21-47:5); AppxA403-A405 (Trial Tr. Day 2 at 69:23-71:9). A.R. has celebrated his birthday with Uncle each year, and Aunt and Uncle like to buy him presents like a dart board and Spiderman pajamas. AppxA385-A386 (Trial Tr. Day 2 at 51:15- 52:10). These relationships are deep and important to A.R. Aunt testified that "he's an awesome kid" and that she would be "sad" if A.R. had to return to Brazil. AppxA382 (Trial Tr. Day 2 at 48:20); Appx388 (Trial Tr. Day 2 at 54:8). Uncle testified that he views A.R. as his

nephew, and said that if A.R. were returned to Brazil, he would "feel like we are losing a family member here." AppxA408 (Trial Tr. Day 2 at 74:7-9).

A.R. also attends larger family events alongside Mother, Stepfather, Aunt, and Uncle. A.R.'s Stepfather has multiple aunts, uncles, and cousins that live in Massachusetts and come to these family gatherings. AppxA382-A383 (Trial Tr. Day 2 at 48:21-49:21). Stepfather's cousins also have children, including at least one who is around A.R.'s age. AppxA383 (Trial Tr. Day 2 at 49:22-25). A.R. spends time with his cousin both at larger family events, and on excursions like going to the amusement park. AppxA791 ("Photographs of Child with family (Trial Ex. JX-18)"). The Child also spends holidays with his extended family; last Christmas A.R. was surrounded by family in a full house full of aunts, uncles, and cousins. AppxA385 (Trial Tr. Day 2 at 51:4-14); *see* AppxA789 (Photograph of Child with cousin (Trial Ex. JX-17)"). At the time of trial, the family had recently gotten together to celebrate Mother's birthday. AppxA406 (Trial Tr. Day 2 at 72:15-22).

The District Court attempted to minimize A.R.'s relationships with his family in the United States by ██████████████████████████████ ████████████████████ AppxA682. This is in error, as there is no support for the heightened standard that the familial and community relationships must be by blood. In fact, case law supports that relationships with family **of any kind**—

whether biological family or not—can be evidence that a child is settled. *See, e.g.*, *Anderson*, 250 F. Supp. 2d at 882-83 (the fact that the child spent time with her "stepfather's extensive family," including "many cousins her age" supported that the child was settled). The Child's relationships with his family members through Mother's marriage to Stepfather are no less deep and significant because they are not biologically related, and it was in error to discount the evidence of these ties.

The evidence also demonstrates that the Child has friends in Massachusetts and other connections to the community. Mother testified that A.R. has at least four of five friends in the United States. AppxA342 (Trial Tr. Day 2 at 8:17-19). The Child has friends at school, including at least one that he spends time with outside of school. AppxA419 (Trial Tr. Day 2 at 85:21-24). He has also made friends in his community, which has many Brazilian residents for A.R. to connect with. AppxA419-A420 (Trial Tr. Day 2 at 85:25-86:6). The Child has a friend who lives in his apartment building, another child that he likes to play soccer with, and another friend that he plays video games with. AppxA420 (Trial Tr. Day 2 at 86:9-16). Mother also testified that A.R. attends church twice a month and participates in groups for children at church. AppxA421 (Trial Tr. Day 2 at 87:7-21). He has friends that he plays with while attending church. AppxA421-A422 (Trial Tr. Day 2 at 87:22-88:1). On the day of trial, Mother stated that the Child had most recently spent time with his friends **the weekend before**, when he attended a party with

friends. AppxA331 (Trial Tr. Day 1 111:8-12); *see also Zuker v. Andrews*, 2 F.

Supp. 2d 134, 141 (D. Mass. 1998) (evidence that the child attended "birthday

parties and playdates" and "established relationships" with other students was

sufficient to find the child well-settled); *Diaz Arboleda v. Arenas*, 311 F. Supp. 2d

336, 343 (E.D.N.Y. 2004) (children had "a number of friends" at school and spent

time with them in school and during the summer, which supported a finding that

they were settled).

The District Court relies on *Rodriguez v. Noriega* for the proposition that a

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. 732 F. Supp. 3d 990, 1002 (D. Minn. 2024). Even leaving aside that

the record is in fact replete with evidence of A.R.'s relationships with friends, the

District Court's reliance on *Noriega* is misplaced. That case involved a situation

where the child had no familial ties to the United States other than his mother;

when coupled with a lack of testimony about the "nature and quality" of the child's

friendships, there was insufficient evidence to support a finding that the child was

settled. *Id.* That is not the case here, where A.R. has myriad family in

Massachusetts other than his Mother, including his Stepfather, Aunt, Uncle, and

other aunts, uncles, and cousins that he sees regularly. Taken in concert with the

testimony regarding his numerous friendships, it is clear that A.R.'s situation is dissimilar from *Noriega*.

A.R.'s familial and community ties are more akin to those in cases where courts have found a child to be well-settled. In *da Costa,* for example, the court considered that the child had "strong relationships and significant contact" with his half-brother, grandmother, uncle—who he saw nearly daily—and grandfather—who he saw frequently. *da Costa*, 2023 WL 4049378, at *9. The court in *da Costa* did not point to any other evidence of other the child's friendships or ties to the community, but nonetheless found that his connections to the United States were sufficient to find him well-settled. *Id.* Here, the evidence shows that not only does A.R. have important relationships with his Mother and Stepfather, but he also has an aunt and uncle that he previously saw every day (and continues to see frequently), as well as other extended family that gathers for holidays and special occasions. Unlike in *da Costa*, there is evidence here that the Child has friends he spends time with outside of school. Arriving at different conclusions in these two circumstances cannot be reconciled, and it was clear error to find that this factor did not support that the Child is well-settled.

E.  <u>The Child Participates in Community and Extracurricular Activities</u>

The Child also regularly and meaningfully participates in community or extracurricular school activities. He goes to church twice monthly, and while there

participates in a youth group with other children his own age. AppxA421 (Trial Tr. Day 2 at 87:7-21). He has made friends at church and spends time with them. AppxA421-A422 (Trial Tr. Day 2 at 87:22-88:1); *see* AppxA786 ("Photograph of Child at church (Trial Ex. JX-14)"). A.R. also plays soccer with his friends, and now is formally taking soccer lessons. AppxA420 (Trial Tr. Day 2 86:16-20). The District Court discredited this evidence because in its estimation, ███████████ ██████████████████████████████████████ but there is no support for a requirement that the child have participated in an activity for any specific amount of time. The Order did not give any justification for ███████████████████ ██████████████████████████████████ When properly considered, the evidence is sufficient for this factor to weigh in favor of finding A.R. well-settled in Massachusetts. *See, e.g.*, *da Costa v. de Lima*, No. 22-CV-10543-ADB, 2023 WL 4049378, at *5 (D. Mass. June 6, 2023) (Burroughs, J.), *aff'd* 94 F.4th 174 (1st Cir. 2024) (finding participating in church services and activities and taking swim lessons for a few months sufficient to weigh in favor of the child being well-settled); *Taveras*, 22 F. Supp. 3d at 238 (attending church two times per week sufficient to support a finding that the child was settled); *Lomanto*, 2023 WL 4118124 (attending the same church for a year and a half and participating in extracurricular sports favored finding the children settled).

## F.  Appellant is Financially Stable

███████████████████████████████████████

████████████████████████████████████ AppxA685.

Mother has work authorization and works part-time as a house cleaner. AppxA340

(Trial Tr. Day 2 at 6:9-14). Stepfather works in construction and earns over $2,000

per week. AppxA341 (Trial Tr. Day 2 at 7:5-16). Together, they earn enough

money to pay rent and for all of the Child's needs. AppxA685. Further, Uncle and

Aunt are employed, provide gifts to the Child, and are willing to support the Child

and Respondents if needed, though it has not been needed to date. AppxA387

(Trial Tr. Day 2 at 53:17-19); *see also Matute-Castro v. Jimenez-Ortiz*, No. 15-cv-

04568 (DLI)(JO), 2016 WL 8711076, at *29-30 (E.D.N.Y. Aug. 26, 2016) (finding

that because the respondent and child were receiving stable and substantial support

from other sources, respondent's inability to work did not support the conclusion

that this factor weighed against finding that the child was settled). This factor also

weighs in favor of finding the Child is well-settled.[10]

---

[10] The District Court also discussed Mother and A.R.'s immigration status in the Order. Mother has a pending asylum application that covers A.R. AppxA685-A686. However, as the Order notes, immigration status is generally "relevant only if there is an immediate, concrete threat of deportation." AppxA686 (citing *Moura*, 67 F. Supp. 3d at 499-500). There has been no formal resolution of the asylum case, and there is no immediate threat of deportation, and therefore A.R.'s immigration status is only a neutral factor in the settled analysis.

## CONCLUSION

For the foregoing reasons, Respondent-Appellant Jessica Silveira da Silva respectfully requests that this Court overturn the ruling of the District Court and issue a finding that the Child is well-settled in the United States.

Dated: May 19, 2025                    Respectfully submitted,

JESSICA SILVEIRA DA SILVA,

By her attorneys,

*/s/ Ruben J. Rodrigues*
Ruben J. Rodrigues (1st Cir. Bar No. 1208629)
Beth I. Z. Boland (1st Cir. Bar No. 1028716)
Lea Gulotta James (1st Cir. Bar No. 1197866)
Amani Kmeid (1st Cir. Bar No.1208627)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
T: 617.342.4000
F: 617.342.4001
rrodrigues@foley.com
bboland@foley.com
ljames@foley.com
akmeid@foley.com

*Counsel for Jessica Silveira da Silva*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,909 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Dated: May 19, 2025

*/s/ Ruben J. Rodrigues*
Ruben J. Rodrigues

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system, which will send notifications of such filing to all CM/ECF

counsel of record.

*/s/ Ruben J. Rodrigues*
Ruben J. Rodrigues

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

| Docket No. | Description | Pages |
|---|---|---|
| 45 | Judgment, dated May 13, 2025 | ADD1 |

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Edervaldo Rodrigues Da Silva
_____

                    Plaintiff(s)


        v.                         CIVIL ACTION NO. 1:24-cv-11280-ADB



Jessica Silveira Da Silva
_____

                    Defendant(s)



JUDGMENT IN A CIVIL CASE


Burroughs, D. J.
_____


____        **Jury Verdict.**   This action came before the court for a trial by jury.   The
            issues have been tried and the jury has rendered its verdict.


X           **Decision by the Court.**   This action came to trial or hearing before the
            Court.   The issues have been tried or heard and a decision has been
            rendered.


        IT IS   ORDERED AND ADJUDGED:

Edervaldo da Silva's Petition for Return of Child Under the Hague Convention is GRANTED.

IT IS HEREBY ORDERED that A.R. shall be returned to Brazil, his country of habitual residence,
at Respondent's expense at a reasonable date and time mutually agreed upon by the parties.

IT IS FURTHER ORDERED that Respondent shall make all necessary arrangements associated
with returning A.R. to Brazil.


ADD1

IT IS FURTHER ORDERED that Respondent shall not, absent leave of this Court,remove A.R. from the District of Massachusetts pending his return to Brazil.

IT IS FURTHER ORDERED that counsel for Respondent shall file a notice with the Clerk of Court immediately upon A.R.'s arrival in Brazil, indicating that Respondent has fully complied with the terms of this Order.




ROBERT M. FARRELL

CLERK OF COURT




Dated: 3/13/2025 _____        /s/ *Caetlin McManus*
                                            By: Caetlin McManus


                                            Deputy Clerk


ADD2